IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SARAH CLINE                                                                                   PLAINTIFF

v.                                                                  CIVIL ACTION NO. 4:23-cv-00071-SA-JMV

WAL-MART STORES EAST, LP;
JOHN DOE(S) 1-10, AND
JOHN DOE COMPANY(IES) 1-10                                                    DEFENDANTS

ORDER AND MEMORANDUM OPINION

On April 6, 2023, Sarah Cline initiated this civil action by filing her Complaint [2] against Wal-Mart Stores East, LP[1] ("Walmart") in the Circuit Court of Leflore County, Mississippi. The Complaint [2] brings a negligence claim against Walmart, John Does 1-10 and John Doe Companies 1-10. On April 21, 2023, Walmart filed a Notice of Removal [1], removing the action to this Court on diversity grounds. Before the Court is Walmart's Resubmitted Motion for Summary Judgment [49]. The Motion [49] has been fully briefed and is now ripe for review. The Court is prepared to rule.

*Relevant Background*

On April 26, 2020, Cline and her then-boyfriend, Jerod Johnson, went to Walmart in Greenwood, Mississippi to purchase automotive merchandise. Upon entering the automotive aisle located at the back of the store, Cline slipped and fell on an unknown substance and was subsequently transported to a nearby hospital by ambulance. At her deposition, Cline testified that—although not completely certain—she believed the substance on the floor was an oily automotive product. She testified that she had an oil-like substance in her hair and on her clothing when she regained consciousness at the hospital after the fall. Cline further testified that she did

---

[1] Wal-Mart, Inc. and Walmart Supercenter #716 were also sued in this action. However, these parties were previously dismissed by the Court. *See* [10]. Wal-Mart Stores East, LP is the sole remaining defendant.

not know how the oily substance got on the floor nor how long it existed on the floor before she fell. Store Manager Shijuanna Rainney submitted an affidavit stating that Walmart did not cause the condition on the floor, did not have knowledge of the condition prior to Cline's fall, and did not know how long the condition existed.

The store's surveillance videos from the day in question do not capture Cline's fall because there was no camera angled down the aisle where she fell. However, there is recorded footage of the surrounding area, including two videos which capture the two ends of the subject aisle one hour before and one hour after the incident. The automotive aisle where Cline fell is labeled "L30" as shown by one of the videos.

The videos show Cline and Johnson pushing an empty cart around the automotive section of the store between 7:22 and 7:23 p.m. Other customers are seen entering and exiting the subject aisle just minutes prior to Cline and Johnson entering the aisle. Walmart's assistant manager, Leah Hutsell, is also seen walking past the aisle minutes prior to the incident.

Approximately one minute after Cline and Johnson are seen entering the subject automotive aisle, customers are seen stopping and looking toward the aisle as if something has occurred.[2] One customer appears to get the attention of a male Walmart employee who in turn signals to Hutsell to approach the aisle, which she does.

About twenty-six minutes later, paramedics arrive and extract Cline from the subject aisle on a stretcher. Then, an employee is seen approaching the area with a mop bucket and another employee closes the aisle with orange tape on both ends. Walmart took photographs of the floor of the subject aisle after Cline's fall.[3]

---

[2] Johnson was the only person who witnessed the incident but has not been located by the parties since the commencement of this lawsuit.
[3] The parties do not appear to dispute that the photographs were taken after Cline's fall. Rainney testified that she did not know when the photographs were taken but confirmed that no photographs were taken

Thereafter, Cline filed suit alleging that Walmart's negligence caused her to fall and suffer injuries. In its Resubmitted Motion [49], Walmart argues that Cline's claim should be dismissed because Walmart did not have actual or constructive knowledge of the dangerous condition. Cline opposes the Motion [49].

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However,

---

before the incident. During Cline's deposition, defense counsel represented to Cline that the photographs were taken after the incident. *See* [49], Ex. 1 at p. 33. Notably, no evidence was provided to indicate exactly how long after the incident the photos were taken.

"[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

Mississippi law applies because this action is before the Court on the basis of diversity jurisdiction. *See*, *e.g.*, *Klocke v. Watson*, 936 F.3d 240, 244 (5th Cir. 2019) (citing *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965)) ("The *Erie* line of authorities holds that substantive state law must be applied in federal courts in diversity cases[.]").

This is a premises liability case. Premises liability, as a theory of negligence, requires a plaintiff to prove that the defendant breached a duty. *See Thomas v. Boyd Biloxi LLC*, 360 So. 3d 204, 213 (Miss. 2023) (citing *Double Quick, Inc. v. Moore*, 73 So. 3d 1162, 1166 (Miss. 2011)). Under Mississippi law, "[a] business owner owes a duty to an invitee to keep its premises in a reasonably safe condition and to warn the invitee of dangerous conditions that are not readily apparent." *Clinton Healthcare, LLC v. Atkinson*, 294 So. 3d 66, 71 (Miss. 2019) (citing *Drennan v. Kroger Co.*, 672 So. 2d 1168, 1170 (Miss. 1996)).[4] "However, business owners are not insurers against all injuries." *Bonner v. Imperial Palace of Miss., LLC*, 117 So. 3d 678, 682 (Miss. Ct. App. 2013) (citing *Munford, Inc. v. Fleming*, 597 So.2d 1282, 1284 (Miss. 1992)).

To establish a business owner's negligence, a plaintiff must show that "the proprietor had actual knowledge of a dangerous condition, *or* the dangerous condition existed for a sufficient amount of time to establish constructive knowledge, in that the proprietor should have known of the condition, *or* the dangerous condition was created through a negligent act of a store's proprietor

---

[4] The parties agree that Cline was a business invitee to whom Walmart owed a duty.

4

or his employees." *Thomas v. Boyd Biloxi LLC*, 360 So. 3d 204, 213 (Miss. 2023) (quoting *Munford, Inc. v. Fleming*, 597 So. 2d 1282, 1284 (Miss. 1992)) (emphasis in original).[5]

Here, as previously noted, no one knows how the oily substance came to be on the floor of the subject automotive aisle at Walmart. Cline does not contend that Walmart's own negligence created the condition which caused her to fall. There is also no evidence that Walmart actually knew the oily substance was on the floor prior to Cline's fall.[6] Instead, Cline relies on the theory of constructive knowledge for imposing liability on Walmart.

"Constructive knowledge is established where the condition is shown to have existed for such a length of time that the operator, through the exercise of reasonable care, should have known of its existence." *Hearn v. Square Prop. Inv., Inc.*, 297 So. 3d 292, 296 (Miss. Ct. App. 2020) (quoting *Haggard v. Wal-Mart Stores, Inc.*, 75 So. 3d 1120, 1125 (Miss. Ct. App. 2011)). To establish constructive knowledge in a slip-and-fall case, "[t]he plaintiff must present specific proof as to the relevant actual length of time" the condition existed. *Id.* (quoting *Haggard*, 75 So. 3d at 1126). "Circumstantial evidence may be used to prove the length of time a dangerous condition has existed, so long as it 'creates a legitimate inference that places it beyond conjecture.'" *Evans v. Aydha*, 189 So. 3d 1225, 1230 (Miss. Ct. App. 2016) (quoting *Herrington v. Leaf River Forest Prods., Inc.*, 733 So. 2d 1260, 1262 (Miss. Ct. App. 2002)).

---

[5] The parties do not dispute that the unknown oily substance on the floor constituted a dangerous condition that caused Cline's fall.

[6] In her Response Memorandum [55], Cline does not argue nor provide evidence that Walmart had actual knowledge of the oily substance on the floor of the automotive aisle. While she cursorily argues that "actual or constructive notice is generally a fact issue," she does not expand on this assertion as to the actual notice prong. [55] at p. 4, 9. Accordingly, it is not necessary for the Court to address this non-contested issue.

In its Motion [49], Walmart argues that Cline is unable to prove the amount of time the unknown oily substance existed on the floor and therefore constructive knowledge cannot be established. The Court turns to the evidence relevant to this issue.

I. *Video Evidence*

Based on the available surveillance footage, Walmart asserts that "four teenager customers" caused the spill "mere seconds before [Cline's] slip and fall incident." [51] at p. 3. Walmart argues that it did not have sufficient time to gain constructive knowledge of the condition because it was created within a matter of seconds before Cline's fall. However, Rainney blatantly contradicted this assertion in her deposition. Rainney testified that Walmart could not determine whether or not the teenagers created the condition, and she did not know how long it existed. *See* [49], Ex. 7, at p. 24-25, 27.

Crucially, the two surveillance videos do not capture the subject automotive aisle where Cline fell and are not helpful to the Court in determining how long the condition existed. The first video begins approximately one hour before Cline enters the subject aisle. [28], Ex. 2, at 00:01-03:23.[7] Cline is seen walking into the aisle at 7:23 p.m. and then leaving the aisle on a stretcher at 7:49 p.m. *See id.* at 03:26, 29:08. The second video also begins approximately one hour before Cline is seen entering the aisle, but it only shows her walking on the main aisle towards the camera—it does not show her on the subject aisle. [28], Ex. 3, at 00:01-02:33. Overall, the videos show customers entering and exiting the subject aisle prior to the incident but provide no proof as to how long the condition existed before Cline slipped and fell. The Court cannot speculate as to the time frame based on these surveillance videos. *See Dickens v. Wal-Mart Stores, Inc.,* 841 F.

---

[7] It appears that a duplicate video was inadvertently submitted as Exhibits 2 and 3 to Walmart's Resubmitted Motion [49]. Walmart's original Motion [28] does attach two different videos as Exhibits 2 and 3. The parties reference both videos in making their respective arguments. Accordingly, the Court cites Walmart's original Motion [28] when referencing each of the videos.

6

Supp. 768, 771 (S.D. Miss.1994) (stating that "[t]he courts will not indulge in presumptions on the length of time an unsafe condition may have existed; rather, a plaintiff must present specific proof on this point.").

*II.     Photographs*

On the other hand, Walmart produced five photographs of the floor in the area where Cline fell that show the condition of the floor after the incident. *See* [56], Ex. A. In her Response Memorandum [55], Cline argues that these photographs create a question of fact as to whether Walmart should have known of the hazard. The Court agrees.

Mississippi courts have previously held that the dirty condition of a spill may create a question of fact as to the length of time a dangerous condition existed—and by extension, whether a business owner had constructive knowledge of the spill. *See Ducksworth v. Wal-Mart Stores, Inc.*, 832 So. 2d 1260, 1262 (Miss. Ct. App. 2002). In *Ducksworth*, the Mississippi Court of Appeals found that a directed verdict was erroneously entered for the defendant in a case where a slip-and-fall plaintiff introduced a photograph showing cart tracks and shoe prints at the location where she fell. *Id*. In describing the photograph, the court explained that "[t]he spill was dirty, with shoe prints and cart tracks in it." *Id*. The court determined that those physical characteristics created an issue of fact as to whether the store had constructive knowledge of the spill and the issue should have been submitted to the jury. *Id*. In *Ducksworth*, the photograph was also taken after the fact. *Id*.

Here, Cline produced the same type of evidence that created a triable issue of fact in *Ducksworth*. In particular, like the photo produced in *Ducksworth*, the photographs taken by Walmart after Cline's fall show a *dirty* spill on the aisle floor, and *dirty* footprints and cart marks

7

throughout the area where Cline fell. *See* [56], Ex. A. The spill's characteristics as shown in the photographs are the same as the court described in *Ducksworth*.

Additionally, the Court finds the 2016 Mississippi Court of Appeals decision in *Evans* instructive. In *Evans*, Janet Evans slipped and fell on a "black spot" at JB's convenience store/gas station. 189 So. 3d at 1228. In her deposition, Evans could not describe the spot or how long it had been there. *Id*. JB moved for summary judgment arguing, among other arguments, that Evans could not show that JB's had constructive notice of the alleged dangerous condition. *Id*. at 1229. In response, Evans offered the affidavit of her daughter, Loyd, in which Loyd explained that she had gone to JB's convenience store/gas station after her mother's fall and observed a black spot on the premises that she described as "'sludge,' '*dirty*,' and, in her judgment, at least a few days old." *Id*. at 1230 (emphasis added). The Mississippi Court of Appeals reversed the trial court's grant of summary judgment in favor of JB's and held that it was "satisfied that from the daughter's description of the spot, a reasonable inference can be made that it existed long enough to place JB's on constructive notice of its existence" *Id*. As to whether the spot described by Loyd could have been created after the fall, the court explained that it was reasonable to infer that the spot was the same as when Evans fell. *Id*.

As in *Evans*, Cline testified that she did not know how long the oily substance had been on the floor:

> Q. Okay. All right. So next as far as this oil substance that was on the floor, do you have any information how long that oily substance was on the floor before your incident happened?
>
> A. No.
>
> Q. You have no idea whatsoever?
>
> A. No.

8

> Q. Do you know if it was two seconds or –
>
> A. I have no clue.

[49], Ex. 1 at p. 21-22.

However, the photographs show that the spill was dirty, like the spills in *Ducksworth* and *Evans*. As such, a legitimate inference can be made from the photographs provided in this case that the condition existed for quite some time. *See Simmons v. Home Depot*, 2018 WL 4925758, at *2 (S.D. Miss. Oct. 10, 2018) (holding that "a legitimate inference can be made that the spill was on the floor for long enough to establish constructive knowledge" where the plaintiff pointed to photos taken after the spill and testimony describing the spill as "discolored around the edges.").

In its Reply [57], Walmart appears to argue that the photographs do not establish constructive knowledge because the footprints and marks could have been caused by the paramedics, Johnson, or Walmart employees who walked around the area in response to the incident. Although Walmart may ultimately prevail on that theory at trial, such a theory is based on speculation and Walmart points to no summary judgment type *evidence* to support it. *See Nabors*, 2019 WL 2617240 at *1 (speculation and unsubstantiated assertions are not an adequate substitute for specific facts showing a genuine issue for trial). As noted, the videos do not show the condition of the floor prior to the incident nor immediately after the first responders entered the area because there is simply no footage from the aisle itself. Viewing the evidence currently before the Court in the light most favorable to Cline, a reasonable jury could infer that the footprints and marks were caused by others long before the incident occurred, given their dirty appearance.

In summary, while the photographs do not establish a precise quantitative measure of time, they are specific proof as to the "relevant actual length of time." *See Hearn*, 297 So. 3d at 296. A

9

jury could look at the photographs and make a legitimate inference that the condition existed for such a length of time that Walmart should have known of its existence.[8] In light of this, Cline has submitted evidence creating a question of fact as to Walmart's constructive knowledge and summary judgment is not appropriate.

*Conclusion*

For the reasons set forth above, Walmart's Resubmitted Motion for Summary Judgment [49] is DENIED. Cline will be permitted to proceed to trial on her negligence claim.

SO ORDERED, this the 17th day of September, 2024.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

---

[8] The Court is cognizant that Cline additionally argues that Walmart breached its duty to inspect its premises and that a question of fact exists as to whether an inspection would have revealed the condition. However, no evidence was presented to the Court as to Walmart's alleged failure to inspect. Therefore, the Court sees no need to address the argument.